UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAYTRON D. BESS, | No. 2:19-cv-01675 AC |
| Plaintiff, | |
| v. | ORDER |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[1]  For the reasons that follow, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

////

////

---

[1] SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

1

I.  PROCEDURAL BACKGROUND

Plaintiff applied for supplemental security income on December 19, 2016. Administrative Record ("AR") 11, 242-48.[2] Plaintiff alleged the disability onset date was January 1, 2016. Id. The applications were disapproved initially (AR 174-77), and on reconsideration (AR 179-83). On June 12, 2018, ALJ Jane M. Maccione presided over hearings on plaintiff's challenge to the disapprovals. AR 92-113 (transcript). Plaintiff, represented by attorney Shellie Lott, was present and testified at the hearing. AR 94. Lorian Hyatt, a vocational expert, also testified. Id.

On September 26, 2018, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 11-29 (decision), 30-33 (exhibits). On July 24, 2019, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-3 (decision).

Plaintiff filed this action on August 27, 2019. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF No. 14. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 11 (plaintiff's summary judgment motion), 12 (Commissioner's summary judgment motion), 13 (plaintiff's response).

II.  FACTUAL BACKGROUND

Plaintiff was born in 1984, and accordingly was 32 years old when he filed his application. AR 28. Plaintiff has at least a high school equivalent education and is able to communicate in English. Id., AR 504. Plaintiff previously filed a Title XVI application for supplemental security income on January 11, 2016. The previous determination was reopened because the current application was filed within one year of the initial determination of the prior application (April 1, 2016), the representative requested reopening, and the record indicates that the claimant is alleging the same injuries and onset. AR 11.

////

////

---

[2] The AR is electronically filed at ECF Nos. 10-3 to 10-11 (AR 1 to AR 561).

### III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Supplemental Security Income is available for every eligible individual who is "disabled." 42 U.S.C. § 1381a.  Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. § 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id., § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id., § 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

4

1  Id., § 416.920(a)(4)(v), (g).

2      The claimant bears the burden of proof in the first four steps of the sequential evaluation

3  process.  20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or

4  disabled"); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis,

5  the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can

6  engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698

7  F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity since January 11, 2016, the re-opened application date (20 CFR 416.971 *et seq.*).
>
> 2. [Step 2] The claimant has the following severe impairments: chronic left thigh pain, status post femur fracture by gunshot wound and open reduction internal fixation; cannabis use disorder; alcohol use disorder; mild cluster B personality traits or antisocial personality disorder; posttraumatic stress disorder; depressive disorder with anxious distress; and cocaine use disorder in reported remission (20 CFR 416.920(c)).
>
> 3. [Step 3] 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c), except he is limited to occasional crouching and crawling; he cannot climb ladders or scaffolds. The claimant is limited to simple, routine tasks. He is limited to occasional interaction with supervisors; to brief, superficial, and non-collaborative interaction with co-workers; and to no interaction with the public. The claimant is limited to a low-stress work environment, defined as involving no more than simple workplace decisions and no more than occasional changes to the workplace setting and routine.
>
> 5. [Step 4] The claimant has no past relevant work (20 CFR 416.965).
>
> 6. [Step 5] The claimant was born [in 1984] and was 32 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

>7. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
>8. [Step 5, continued] Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).
>
>9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CF'R 416.969 and 416.969(a)).
>
>10. The claimant has not been under a disability, as defined in the Social Security Act, since January 11, 2016, the date the re-opened application was filed (20 CFR 416.920(g)).

AR 14-29. As noted, the ALJ concluded that plaintiff was "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 26.

## VI.  ANALYSIS

Plaintiff alleges the ALJ erred in that (1) the finding that Mr. Bess retains the residual functional capacity ("RFC") to perform the exertional requirements of medium work is not based on substantial evidence, and (2) The Commissioner failed to articulate clear and convincing reasons for rejecting the opinion of Dr. Dowback (treating orthopedist) and failed to provide germane reasons for rejecting the opinion of Jennifer Mallonga (treating physical therapist). ECF No. 11 at 4.

### A.  Summary of Medical Evidence

Prior to plaintiff's onset date, he was treated in 2011 at San Joaquin Hospital for right leg pain and mid-chest pain and had difficulty standing for long periods of time. AR 319, 427-428. An x-ray showed an old healed fracture presumably from a gunshot injury, distal fibular diaphysis. AR 319. Plaintiff presented again on May 25, 2015 to San Joaquin Hospital. AR 398-399. He was brought into the emergency room, status post gunshot wound to the left femur. Id. X-rays showed multiple bullets and bullet fragments and pelvic x-rays showed severe comminuted fracture of the left femur and multiple displaced bone fragments. Id. Plaintiff underwent an open reduction and internal fixation of the left femur with correction of rotation and axial instability with two locking screws proximal and distally. Id. He was discharged on May

1  28, 2015 with a ten-pound weight to leg with crutches.  Id.  He was diagnosed with grade I open
2  right femoral shaft fracture secondary to gunshot wound with comminution and shortening,
3  Winquist type III rotationally and axially unstable.  Id.  Plaintiff was seen on August 27, 2015 at
4  San Joaquin Hospital emergency room.  AR 325.  He described his history of surgery for a
5  gunshot wound and fracture of femur and reported slipping in the shower and hitting his knee.  Id.
6  An x-ray showed hardware failure of the distal transfixing screws and partial interval healing at
7  the comminuted left femur fracture.  Id.

8      On September 9, 2015, Dr. Farhan Fadoo treated Mr. Bess for leg problem.  AR 354.  He
9  was found to have a non-traumatic hematoma of the muscle and might need surgery.  Id.  On
10  September 21, 2015, Dr. John Dowback, an orthopedist, treated plaintiff at the San Joaquin
11  Hospital.  AR 322-323.  Plaintiff had fallen getting out of the shower on August 21, 2015 and
12  landed on his left knee.  Id.  He reported increasing pain with a very prominent mass of the left
13  knee.  Id.  His screws were broken, and the fracture was healing but he now had 14 millimeters of
14  shortening.  Id.  The screws were penetrating the quadriceps, causing pain.  Id.  He was referred
15  for removal of the screws from his left femur.  Id.  He was not able to undergo surgery until
16  February 2016.

17      On February 26, 2016, Mr. Bess underwent surgery with Dr. Dowback.  AR 344-345,
18  395.  Although he had two fractured screws, he underwent removal of only the broken anterior
19  screw from the left femur because the other screw was not interfering with the quadriceps
20  mechanism.  AR 344.  As of March 14, 2016, plaintiff had good range of motion of the left knee,
21  though there remained callus formation of bone at the fracture site and the heterotopic bone
22  fragment adjacent to the greater trochanter of the proximal femur was unchanged.  AR 361, 401.
23  On May 12, 2016, plaintiff presented for surgical follow up.  AR 365, 402.  On examination, he
24  walked with an antalgic gait and used a brace for support.  Id.  Plaintiff underwent a femur x-ray
25  that showed stable IM rod with a stable fracture distal screw and complete or near complete
26  interval healing of a mid-shaft comminuted fracture.  Id.  Numerous bullet fragments remained
27  and there was mild tissue swelling.  Id.  Plaintiff was diagnosed with type III open displaced
28  comminuted fracture of shaft of left femur with delayed healing.  He was prescribed Norco and

1  Gabapentin and continued to use his neoprene brace.  Id.

2  As of July 14, 2016, plaintiff requested that his rods be removed but Dr. Dowback told
3  him he must wait at least another year and continued him on Norco.  AR 367.  On October 13,
4  2016, plaintiff presented with a prominent mass of the left knee.  AR 369, 400.  He assessed his
5  pain at a five out of ten.  Id.  He underwent an x-ray of the left femur that showed a maturing
6  healed femoral shaft fracture.  Id.  On October 26, 2016, plaintiff underwent a CT scan of the left
7  lower extremity to compare to previous x-rays in October.  AR 393.  The scan showed no change
8  in the old healed fracture deformity of the mid shaft left femur, status post ORIF.  Id.  There was
9  a residual open defect along the lateral cortex of the femur was unchanged compared to prior x-
10 rays and multiple metallic fragments were again noted from the previous gunshot wound.  Id.  On
11 December 1, 2016, plaintiff presented with continued pain, though he noted his pain was less at
12 the time.  AR 371.  He was continued on Norco and was using a cane.  Id.

13 From April 2017 through June 2017, plaintiff was treated at San Joaquin Hospital Primary
14 Medicine Clinic.  AR 439-449.  On April 4, 2017, he presented with abdominal and left leg pain.
15 AR 439.  Examination revealed chronic left thigh pain and evidence of gunshot wounds in the left
16 lower quadrant and left thigh.  Id.  Plaintiff was referred to an orthopedic surgeon for chronic leg
17 and thigh pain.  Id.  Plaintiff was referred to pain management on May 9, 2017.  AR 445.  In June
18 of 2017 he was started on Gabapentin for chronic pain and referred for physical therapy and
19 referred to psychiatry for depression.  AR 447-448.  Dr. Dowback treated Mr. Bess for leg pain
20 on June 22, 2017.  AR 452-453.  Plaintiff was referred for physical therapy evaluation for gait
21 and leg length discrepancy and continued on Norco.  Id.  He saw Dr. Jennifer Mallonga for
22 physical therapy on July 25, 2017.  AR 470-71.

23 On September 14, 2017, Dr. Dowback treated Mr. Bess for his chronic pain in the left
24 femur.  AR 488-489.  Plaintiff rated his pain as a seven out of ten and was continued on his
25 medication for chronic pain.  Id.  He had shortening of the left leg and was advised heel lifts
26 might help.  Id.  On November 29, 2017, Dr. William Holmes examined plaintiff.  AR 484.  He
27 still had chronic pain of his left leg status post fracture of femur and gunshot wounds.  Id.
28 Plaintiff described his pain as "throbbing and constant" and worsened with weather change.  Id.

1  He was referred again to physical therapy. Id.

2  Plaintiff began receiving pain management treatment on November 21, 2017 from Dr.
3  Foad Elahi, due to chronic left leg pain. AR 557-559. Plaintiff presented with left hip, femoral,
4  and thigh pain. He was diagnosed with complex regional pain syndrome of the left lower limb,
5  chronic pain, and myofascial pain and myalgia. AR 559. His pain was described as probably
6  neuropathic. AR 558. Plaintiff returned for follow-up on November 29, 2017. AR 555-556. His
7  pain worsened with movement and overuse. Id. He decided to continue on Norco and would
8  seek a second opinion. He was diagnosed with complex regional pain syndrome of the left lower
9  limb. Id. On January 11, 2018, Dr. Dowback again treated plaintiff for left chronic leg pain. AR
10 479-480. Examination revealed moderate tenderness to palpation of the left leg along the quads,
11 and it was noted that plaintiff was still experiencing 'significant pain." AR 479. He was referred
12 for blood work to rule out infection at the fracture site and continued on Norco. Id. On August
13 28, 2018, Dr. Dowback examined Mr. Bess for chronic leg pain. AR 473. Plaintiff rated his pain
14 as a seven out of ten and he wanted the rod taken out as his leg was still painful. Id. He was
15 continued on his medication and planned to remove the rod in nine months as it was still painful
16 and needed remodeling. Id.

17  B.  Substantial Evidence Does Not Support the ALJ's Medium Work RFC

18 Plaintiff argues that the ALJ erred by assessing plaintiff with medium work capacity but
19 failing to make specific findings, supported by substantial evidence, regarding his ability to stand
20 and walk during an eight-hour day and how much stooping or bending could be performed. ECF
21 No. 11 at 15. Plaintiff points out that "[a]n RFC must include an individual's functional
22 limitations or restrictions as a result of all of his impairments and must assess his 'work-related
23 abilities on a function-by-function basis.' SSR 96-9p, 1996 WL 374184, at *1; see also Valentine
24 v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) ('an RFC that fails to take into
25 account a claimant's limitations is defective')." Id. The court agrees that the ALJ erred by failing
26 to make specific findings regarding plaintiff's ability to stand and walk, particularly in light of
27 plaintiff's chronic pain history.

28 ////

The RFC for medium work is based on the guidance provided by Social Security Ruling (SSR) 83-10, summarized as follows:

> The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semiskilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

SSR 83-10 (S.S.A.), 1983 WL 31251 (Jan. 1, 1983). Here, the ALJ points to nothing in the record that supports a finding that plaintiff could perform six hours of standing or walking on a sustained full-time basis or that he could lift/carry 25 pounds frequently and 50 pounds occasionally. Nothing in the record supports the ability to bend on a frequent basis.

The ALJ found that "[n]o State agency consultant provided any functional opinions on either initial consideration or reconsideration." AR 27. The record contains only two physical assessments—one from treating orthopedist Dr. Dowback and one from the physical therapist, both of which the ALJ rejected. AR 22-23. The ALJ found that Dr. Dowback's opinion was internally inconsistent, and therefore less credible, because it did "not include any postural limitations such as no climbing of ladders or scaffolds that would be expected given the inherent characteristics and location of the claimant's left femur fracture and repair." AR 23. Just a few sentences earlier in her decision, however, the ALJ acknowledged that Dr. Dowback had limited

10

1  plaintiff to "no climbing of ladders or stairs," calling into question the ALJ's evaluation of Dr.
2  Dowback's opinion.  AR 23.

3  Further, the ALJ based the medium work RFC on plaintiff's daily activities, but nothing in
4  the reports of daily activities reflect that plaintiff was performing activities that required him to
5  stand/walk for six hours or more during eight hour workdays and that he was frequently lifting up
6  to 25 pounds and frequently bending/stooping.  The ALJ points to Mr. Bess' daily activities such
7  as performing some chores with assistance, shopping in stores, pursuing some hobbies,
8  maintaining relationships with some friends and immediate family members, and caring for
9  himself independently.  AR 27.  None of these activities rise to the level of medium work.

10  The ALJ also relied heavily on several unremarkable physical examinations.  AR 21-28.
11  The ALJ noted that plaintiff had good motion in his knee and hip, his wound was well healed, and
12  he had no neurological defects.  AR 34, 41, 61, 69, 367, 369, 488, 555-56, 558.  Plaintiff also had
13  no swelling, warmth, erythema or edema, and exhibited normal motor strength, balance, and gait.
14  AR 61, 361, 367, 369, 371, 440, 485, 488, 556, 558.  However, these findings are not inconsistent
15  with disabling levels of pain.  For example, as recently as August of 2018, plaintiff rated his pain
16  as a seven out of ten and he wanted the rod removed because his leg was still painful.  AR 473.
17  Indeed, in some of the same records with "normal" clinical findings, plaintiff was rating his pain
18  7/10.  See AR 34, 69, 488.  The objectively normal findings do not address the fact that plaintiff
19  has been primarily treated for chronic pain problems as discussed above, and the normal clinical
20  findings do not clearly demonstrate that plaintiff would be capable of standing or walking six
21  hours in an eight-hour workday.  According to SSR 83-10, "[i]n most medium jobs, being on
22  one's feet for most of the workday is critical."

23  For all these reasons, the RFC is not supported by substantial evidence.  Remand is
24  necessary.

25  C.  The ALJ Improperly Weighed the Medical Evidence

26  When reviewing the RFC on remand, the ALJ must also reconsider the opinions of
27  treating physician Dr. Dowback and physical therapist Jennifer Mallonga.  It appears that the ALJ
28  misread the opinion of Dr. Dowback, which may have altered her assessment of the medical

opinion evidence. As noted above, the ALJ justified giving less weight to Dr. Dowback's opinion by stating that it did not include any postural limitations such as no climbing of ladders or scaffolds. AR 23. However, Dr. Dowback did address plaintiff's postural limitations, finding that Mr. Bess could rarely stoop or crouch and never climb ladders or stairs—which the ALJ correctly, and inconsistently, acknowledged earlier in her opinion. AR 23, 553. The ALJ must review and reconsider the entire opinion, Exhibit 11F, before weighing the medical opinion evidence.

As to Ms. Mallonga, the ALJ primarily discounts the opinion for inconsistency with the medical record, in "which claimant has presented in grossly intact and stable physical functioning throughout 2016 and 2017, but also that repeat clinical examinations performed over this same period have all failed to identify any apparent areas of concern." AR 24. As discussed above with respect to the RFC, the ALJ fails to take into account the issue of chronic pain. On remand, the ALJ should reconsider Ms. Mallonga's opinion in light of the chronic pain evidence and Dr. Dowback's complete opinion.

### D. Remand for Further Consideration is Necessary

As discussed above, the ALJ erred in erred by not properly considering Dr. Dowback's opinion and not supporting the RFC with substantial evidence. The undersigned agrees with plaintiff that the ALJ's error is harmful and remand for further proceedings by the Commissioner is necessary. An error is harmful when it has some consequence on the ultimate non-disability determination. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006). The ALJ's error in this matter was harmful; correcting the errors may very well result in a more restrictive residual functional capacity assessment, which may in turn alter the finding of non-disability.

It is for the ALJ to determine in the first instance whether plaintiff has severe impairments and, ultimately, whether he is disabled under the Act. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court"). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Further development of the record consistent with this order is necessary, and remand for further proceedings is the appropriate remedy.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 12) is DENIED;

3. The matter is REMANDED to the Commissioner for further proceedings consistent with this order; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

SO ORDERED.

DATED: December 30, 2020

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE